UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

CQ INTERNATIONAL CO., INC.,
                 Plaintiff,
v.

ROCHEM INTERNATIONAL, INC., USA,
                 Defendant.

_____

Civil Action # 08 CV 10142 NG

Judge Nancy Gertner

Mag. Judge Joyce L. Alexander

## DEFENDANT ROCHEM INTERNATIONAL, INC.'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. §1927

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD.............................................................................................. 2

ARGUMENT........................................................................................................... 4

    I.      CQ's COMPLAINT VIOLATED RULE 11 ......................................... 5

          A.     CQ Filed its Complaint Knowing It Did Not Have A Contract With Huizhou Successor In 2006 ...................................................................... 5

          B.     CQ Failed To Conduct A Reasonable Factual Inquiry Prior to Filing Its Complaint .......................................................................... 8

    II.     CQ'S CONTINUED LITIGATION VIOLATED RULE 11 .............................. 11

          A.     CQ Persisted in Litigating After Learning Its Claims Were Untenable ........................................................................................ 12

          B.     CQ's Papers Opposing Summary Judgment Violate Rule 11 .................. 13

          C.     CQ Has Filed Other Frivolous Documents In Violation of Rule 11........ 16

    III.    CQ'S COUNSEL VIOLATED 28 U.S.C. §1927................................................. 17

CONCLUSION...................................................................................................... 19

**Page(s)**

**CASES**

*Bailey v. Papa John's,*
    236 Fed. Appx. 200 (6th Cir. 2007)........................................................................................18

*Bay State Towing Co. v. Barge Am. 21,*
    899 F.2d 129 (1st Cir. 1990)................................................................................................3

*Denny v. Hilton,*
    131 F.R.D. 659 (M.D. N.C. 1990) ......................................................................................11

*Dreiling v. Peugeot Motors of Am., Inc.,*
    768 F.2d 1159 (10th Cir. 1985) ............................................................................................4

*Eberly v. Manning,*
    258 Fed. Appx. 224 (10th Cir. 2007)..................................................................................18

*Fahrenz v. Meadow Farm Partnership,*
    850 F.2d 207 (4th Cir. 1988) ......................................................................................3, 4, 11

*Farino v. Advest, Inc.,*
    111 F.R.D. 345 (E.D.N.Y. 1986)....................................................................................4, 11

*Finance Investment Co. v. Geberit AG,*
    165 F.3d 526 (7th Cir. 1998) ..............................................................................................10

*Forbes v. Merrill Lynch Fenner & Smith,*
    179 F.R.D. 107 (S.D.N.Y. 1998) ........................................................................................10

*G.S. Enterprises, Inc. v. Falmouth Marine, Inc.,*
    410 Mass. 262, 571 N.E.2d 1363 (Mass. 1991)....................................................................1

*Gartenbaum v. Beth Israel Med. Center,*
    26 F. Supp. 2d 645 (S.D.N.Y. 1998)..................................................................................10

*Hilton Hotels Corp. v. Banov,*
    899 F.2d 40 (D.C. Cir. 1990) ....................................................................................2, 9, 10

*Legault v. Zambarano,*
    105 F.3d 24 (1st Cir. 1997) ................................................................................................16

*Mohammed v. Union Carbide Corp.,*
    606 F. Supp. 252 (E.D. Mich. 1985)....................................................................................3

*Morris v. Wachovia Securities,*
    448 F.3d 268 (4th Cir. 2006) ................................................................................................9

*Northwest Bypass Group v. U.S. Army Corps of Engineers*,
  569 F.3d 4 (1st Cir. 2009) ............................................................3,16, 18

*Nyer v. Winterthur Int'l*,
  290 F.3d 456 (1st Cir. 2002) ....................................................................2

*Ousley Productions, Inc. v. WJBF-TV*,
  952 F.2d 380 (11th Cir. 1992) ................................................................10

*Paese v. New York Seven-Up Bottling Co., Inc.*,
  158 F.R.D. 34 (S.D.N.Y. 1994) ..............................................................11

*Roger Edwards, LLC v. Fiddes & Son Ltd.*,
  437 F.3d 140 (1st Cir. 2006) ....................................................................2

*Rosello-Gonzalez v. Acevedo-Vila*,
  483 F.3d 1 (1st Cir. 2007) ........................................................................2

*Royal Oak Entertainment, LLC v. City of Royal Oak*,
  316 Fed. Appx. 482 (6th Cir. 2009)....................................................17, 18

*Salvin v. Am. Nat'l Ins. Co.*,
  281 Fed. Appx. 222 (4th Cir. 2008)..........................................................18

*Silva v. Witschen*,
  19 F.3d 725 (1st Cir. 1994) ......................................................................2

*St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l Inc.*,
  245 Fed. Appx. 588 (9th Cir. 2007)..........................................................18

## STATUTES

28 U.S.C. §1927 ...................................................................... *passim*

## COURT RULES

Fed. R. Civ. P. 11 .................................................................... *passim*

## INTRODUCTION

CQ should never have filed this lawsuit. To prevail in its claims for tortious interference, CQ must prove that (a) it had a valid, enforceable contract with Huizhou Successor, (b) that Rochem knowingly induced Huizhou Successor to breach that contract, (c) that Rochem's alleged "interference," in addition to being intentional, was improper in motive or means, and (d) that Rochem's alleged actions caused harm to CQ. *See, e.g., G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 571 N.E.2d 1363 (Mass. 1991).

CQ filed its tortious interference claims, however, despite ***knowing*** that it did not, in fact, have an enforceable and ongoing contractual relationship to be interfered with. CQ filed its lawsuit without ever investigating what, if anything, Rochem knew about CQ's alleged relationship with Huizhou Successor at the time Rochem purchased Clozapine, and without ever investigating why Huizhou Successor chose to do business with Rochem at all. Finally, CQ filed its lawsuit despite its knowledge that it was not, in fact, "damaged" by Rochem's Clozapine purchases; CQ knew very well, prior to filing its suit, that it would not have purchased Clozapine from Huizhou Successor after May 2005. CQ's filing of its lawsuit despite its knowledge of preclusive facts and failure to properly investigate violated Fed. R. Civ. P. 11.

Moreover, as the case went on, and it became clear that CQ had no admissible, competent evidence to support its claims, CQ insisted on continuing the litigation, demonstrating quite clearly that the case was filed not to right a wrong or to obtain recompense, but rather to harass and intimidate Rochem. Rather than abandon its unsupported claim, CQ filed multiple papers in opposition to Rochem's summary judgment motion, arguing to the Court that it should be permitted to go to a jury based solely on speculation and inadmissible evidence, along with the hope that CQ's counsel could argue the jury into disbelieving the unrebutted record evidence.

CQ and its counsel's behavior in this case, from the beginning has violated Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. §1927, and Rochem is entitled to monetary sanctions as compensation for the costs, fees, and burdens this improper litigation has imposed.

## LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure allows a Court to impose sanctions on a party, its attorney, or both for filing pleadings or motions (along with the allegations, legal positions and arguments therein) that are not "well grounded in fact" or "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," or are "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11; *see also Nyer v. Winterthur Int'l*, 290 F.3d 456 (1st Cir. 2002). Parties, in addition to their attorneys, may be held liable for Rule 11 violations when they offer frivolous arguments or assert "factual allegations without 'evidentiary support' or the 'likely' prospect of such support," and/or they have failed to investigate or disclose, or misrepresent, the factual underpinnings of their claims. *See, e.g., Roger Edwards, LLC v. Fiddes & Son Ltd.*, 437 F.3d 140, 142-43 (1st Cir. 2006); *Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C. Cir. 1990) (sanctions affirmed where attorney did not conduct prefiling investigation). Neither the requirement to vigorously advocate nor reliance upon a client's representations is a defense to a failure to investigate claims or forego filing additional frivolous papers in an effort to continue the litigation after an attorney learns they are unsupported in fact or law. *See, e.g., Silva v. Witschen,* 19 F.3d 725, 730 (1st Cir. 1994) ("We are aware of no authority or other basis for the view that an attorney who files a groundless complaint, for an improper purpose and without reasonable…is exonerated from sanctions because he was simply asserting groundless nonexistent legal claims in behalf of his clients.");

*Mohammed v. Union Carbide Corp.*, 606 F. Supp. 252, 261-62 (E.D. Mich. 1985) ("Although there may be instances in which the attorney will perceive a conflict between the interests of his client and the interest of the fair administration of justice, there is in fact no such conflict. An attorney is obligated to dissuade his client from pursuing specious claims, and thereby avoid possible sanctions be the court, as well as the unnecessary costs of litigating a worthless claim.").

Similarly, 28 U.S.C. §1927 allows courts to sanction any attorney who "multiplies the proceedings in any case unreasonably and vexatiously," and to require the attorney to personally pay the resulting excess costs, expenses, and attorneys' fees. 28 U.S.C. §1927. In the First Circuit, §1927 applies when a lawyer "displays 'a serious and studied disregard for the orderly process of justice,'" *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 569 F.3d 4, 6 (1st Cir. 2009) (citing *Rosello-Gonzalez v. Acevedo-Vil*a, 483 F.3d 1, 7 (1st Cir. 2007)). Although the lawyer's actions "must be more severe than mere negligence, inadvertence, or incompetence," application of "§1927 does not require a finding of subjective bad faith, nor repeated infractions." *Northwest Bypass Group*, 569 F.3d at 6-7 (internal citations omitted).

Asserting factual allegations without proper investigation can violate §1927. *Northwest Bypass Group*, 569 F.3d at 7 (sanctions affirmed where lawyer made allegations "without adequate information and without making an adequate effort to secure it"). Additionally, the failure of an attorney to dismiss claims after it becomes apparent that there is no evidence to support them violates both Rule 11 and §1927. *See, e.g.*, *Bay State Towing Co. v. Barge Am. 21*, 899 F.2d 129 (1st Cir. 1990) (sanctions affirmed where summary judgment opposition filed without inquiry into factual assertions and merely to delay inevitable); *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir. 1988) (holding there was no abuse of discretion to impose sanctions where "plaintiff's counsel continued to pursue their claims for some time after

it would have been reasonable and responsible to dismiss the claims" and that sanctions under §1927 would have been appropriate as well) (citing *Dreiling v. Peugeot Motors of America*, *Inc.*, 768 F.2d 1159, 1166 (10th Cir. 1985)).

## ARGUMENT

The sole basis for CQ's lawsuit against Rochem is CQ's allegation that Rochem intentionally and tortiously interfered with a "contract" it claims it had with a Chinese pharmaceutical ingredient factory, Huizhou Dongjiang Pharmaceutical Co., Inc. ("Huizhou Successor"), by purchasing Clozapine manufactured by Huizhou Successor four times between June and December 2006. To satisfy Rule 11, CQ's allegations and legal arguments in support of the elements of its tortious interference claim (as set forth in its Complaint and as argued in opposition to Rochem's summary judgment motion) must not have been "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," Fed. R. Civ. P. 11(b)(1), must have been "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law," Fed. R. Civ. P. 11(b)(2), and must have had evidentiary support or have been likely to be supported by evidence after a reasonable opportunity for inquiry and opportunity for discovery. Fed. R. Civ. P. 11(b)(3). Parties and their attorneys are required to make reasonable inquiry to determine if their allegations and contentions are factually or legally supported prior to making them. *See, e.g., Farino v. Advest, Inc.*, 111 F.R.D. 345, 349 (E.D.N.Y. 1986) (sanctions warranted where Court determined it was "patently clear that [plaintiffs' claims had] absolutely no chance of success" and that "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact").

CQ's complaint, its continued litigation of this case after opportunity for discovery, and its recent opposition of Rochem's motion for summary judgment, along with its other frivolous motions and correspondence with the Court, each violate those requirements. CQ and its counsel should be sanctioned for their failure to comply with Rule 11, and CQ's counsel should be sanctioned under 28 U.S.C. §1927 for its continued litigation of this case and vexatious multiplication of frivolous proceedings.

## I.      CQ's COMPLAINT VIOLATED RULE 11

CQ's complaint violated Rule 11 in several ways. CQ filed a complaint alleging tortious interference with a contract CQ knew was no longer continuing or enforceable at the time of the alleged interference, seeking damages to which CQ was not legally entitled. Neither CQ nor its counsel conducted a reasonable pre-filing investigation into the factual support for the elements of CQ's tortious interference claim. A simple investigation would have alerted CQ and its counsel to the flawed nature of CQ's complaint.

### A.      CQ Filed its Complaint Knowing It Did Not Have A Contract With Huizhou Successor In 2006

CQ filed its claims for tortious interference with a contract it had repudiated, breached, and abandoned, seeking damages based on sales CQ had legally bound itself not to make. First, CQ produced documents in discovery demonstrating that, in February 2005—more than a year prior to Rochem's first purchase of Huizhou Successor Clozapine—CQ signed an exclusive dealing agreement with a different Clozapine manufacturer, Wuhan Shiji ("SJ/YH"), in which, as CQ concedes, it promised it would not sell Clozapine manufactured by any other entity. [1] CQ

---

[1] *See* Defendant Rochem International Inc.'s Memorandum of Law In Support of Its Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) ("Rochem Op. Br."), Dkt. 67, at 8-9; Defendant's Local Rule 56.1 Statement of Undisputed Facts In Support of Motion For Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) ("Rochem SMF"), Dkt 68, at 4, 19-23.

admits that agreement would preclude CQ from selling Clozapine manufactured by anyone other than SJ/YH.[2]

CQ's alleged contract with Huizhou Successor and its contract with SJ/YH are fundamentally inconsistent—CQ could not adhere to both and sell *any* Clozapine. Even if it could be argued that CQ had a current, enforceable contract with Huizhou Successor at the time CQ entered into its agreement with SJ/YH, the new contract constituted abandonment, breach of contract, breach of the implied covenant of good faith and fair dealing, and/or anticipatory repudiation of that agreement. *See, e.g.* Defendant Rochem International, Inc.'s Supplemental Brief In Support of Motion for Summary Judgment ("Rochem Supp. Brief"), Dkt. 116, at 1-8. The contract with SJ/YH directly and definitively belies CQ's claims that (a) it had an enforceable exclusive agreement with Huizhou Successor in 2006, and (b) Rochem's purchases of Huizhou Successor caused any cognizable "injury" to CQ. CQ has cited no authority that would permit it to seek damages based on sales it could only make by breaching a contract with a different entity. Rochem Supp. Brief at 8-10. CQ sued Rochem for interfering with a contract CQ *knew* prior to filing suit was inoperative. This is sufficient in itself to justify sanctions.

Second, CQ produced evidence in discovery demonstrating that the contract it claimed "succeeded" to Huizhou Successor from the prior owner, Guandong Huizhou Dongjiang Pharmaceutical Factory ("Huizhou Predecessor") never became binding on Huizhou Successor,

---

[2] In response to the Court's January 13, 2009 Order requesting additional legal briefing on this issue, CQ filed—yesterday at close of business—additional declarations on this subject, one of which is from an undisclosed witness, and both of which offer brand new information into the summary judgment record that (a) is inconsistent with CQ's admissions during the briefing process and (b) should—and certainly could—have been introduced earlier. Rochem has not had the opportunity to review that information in detail, however, and will address it, if necessary, in a reply brief in support of this motion. Rochem notes, however, that the declarations directly contradict CQ's previous admission that the new contract requires CQ to purchase all Clozapine only from SJ/YH. *Cf.* Rochem SMF ¶23 with Plaintiff's Local Rule 56.1 Submission (filed under seal), Part II at ¶23.

because the conditions precedent to it so doing were never fulfilled.[3]  Rochem was informed that this was the case back in 2006, and Huizhou Successor provided evidence of this, in the form of testimony from its owner, Mr. Qiu, demonstrating such.[4]  Very late in the discovery period, CQ produced in discovery what it admitted were the auction requirements to which it agreed, which showed that the terms for a new agreement had not been met.[5]  Indeed, even the declarations submitted by CQ in Opposition to Rochem's motion for summary judgment demonstrate this to be the case.[6]  CQ participated in the auction and was aware that no new agreement was ever entered, and no deposits changed hands. Yet the Complaint mentions none of this, and the allegations in the Complaint claim that the alleged "succession" of CQ's contract with Huizhou Predecessor was automatic by virtue of the language in the contract.

Finally, CQ filed its Complaint for tortious interference despite its knowledge that it ceased purchasing and selling Clozapine manufactured by Huizhou Successor more than a year prior to Rochem's first purchase of said Clozapine, and its knowledge that, as of mid-2005, it was attempting to convince its Clozapine customer, Ivax, to switch suppliers to the Wuhan Shiji plant it had recently contracted with.  Rochem Op. Br. at 2-3.  CQ knew that, as of June 2005, it had no intention of dealing with Huizhou Successor in the future, and yet filed a Complaint in which it insinuated it had a continuing relationship.  CQ knew it did not have a valid expectation of a continuing relationship with Huizhou Successor, and filed a Complaint seeking damages related to sales of Huizhou Successor manufactured Clozapine it would never have made.  CQ filed its

---

[3] *See* Rochem Op. Br. at 9-10; Defendant Rochem International, Inc.'s Reply Memorandum of Law in Support of Its Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c) ("SJ Reply"), Dkt. 96, at 3-4; Rochem SMF at ¶¶6-16 and supporting evidence.

[4] Qiu Declaration, Dkt. 69.

[5] Rochem SMF at ¶¶8-14.

[6] Rochem Reply at 3, n.7 (citing Hongyi Decl., Dkt. 81/106, at 9; Chen Decl., Dkt. 82/109, at 14).

Complaint knowing its factual allegations and legal contentions were unsupported, and that not only violates Rule 11 in and of itself, it also evidences CQ's bad faith and improper purpose.

**B.      CQ Failed To Conduct A Reasonable Factual Inquiry Prior to Filing Its Complaint**

CQ's Complaint also violated Rule 11 because neither CQ nor its counsel ever conducted an appropriate pre-filing investigation into CQ's allegations regarding Rochem's alleged "knowledge" and "inducement."  CQ never bothered to obtain anything beyond hearsay in support of these allegations prior to filing, and never bothered to obtain admissible evidence at all on these points during discovery.  Indeed, CQ's arguments opposing summary judgment are all based on inadmissible evidence and unwarranted assumption.  Had CQ taken any reasonable steps to obtain actual information on these elements prior to filing, it would have learned its claims were unsupportable.  CQ and its counsel's failures on these points render its Complaint, and the subsequent litigation, sanctionable.

CQ's Complaint and sworn discovery responses make clear that CQ's only alleged "source" for its allegation that Rochem (a) knew CQ's contract with Huizhou Predecessor was binding on Huizhou Successor and (b) encouraged Huizhou Successor to breach it, is an alleged, unconfirmed hearsay story regarding a dinner that CQ did not attend.[7]  Neither CQ nor its counsel took any reasonable steps to inquire if the information they alleged had any admissible evidentiary support.  After learning of Rochem's Clozapine purchases, CQ never contacted Huizhou Successor to discuss the circumstances and Huizhou Successor's reasons for dealing with Rochem.[8]  Instead, CQ relied solely on the hearsay allegations of a third-party, Mr. Fang Jhigang, who claimed to have attended a dinner with Mr. Qiu Huazhou, owner of Huizhou

---

[7] *See, e.g.*, Complt., Dkt. 25, at ¶ 13; Kefalas Decl. Ex. 1, at Interrogatory Resp. 9; Kefalas Decl. at Ex. 3, Chen Dep. 7/17/09, at 41-47.

Successor, and Robyn Frisch, Rochem's President, to support its arguments that (a) when Rochem purchased Clozapine from Huizhou Successor, Rochem knew about CQ's alleged "agreement" with Huizhou Successor, and (b) that Robyn Frisch urged Mr. Qiu to disregard its agreement with CQ. CQ never sought to preserve Mr. Fang's alleged statements in admissible form.

Moreover, CQ never contacted Mr. Qiu to determine (a) if he ever attended such a dinner, (b) what Huizhou Successor informed Rochem prior to the purchases in 2006 regarding Huizhou Successor's relationship with CQ, or (c) why Huizhou Successor believed it was free to do business with Rochem in 2006. Nor did CQ attempt to determine if Huizhou Successor wanted to do business with Rochem, or what, if anything, Rochem might have done to support a claim that Rochem wrongfully induced Huizhou Successor to sell the Clozapine. *See, e.g., Morris v. Wachovia Securities*, 448 F.3d 268 (4th Cir. 2006) ("'[A] complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions.'"); *Hilton Hotels Corp.*, 899 F.2d at 43 (sanctions appropriate where lawyer failed to conduct prefiling investigation, attorney "should have realized that [plaintiff] could not possibly prevail at trial unless one or more persons could be found to testify" regarding defendant's actions, and

---

[8] This fact also belies CQ's claims to any continuing relationship with Huizhou Successor and its apparent request for injunctive relief.

information could be gathered from third parties to the suit);[9] *Finance Investment Co. v. Geberit AG*, 165 F.3d 526 (7th Cir. 1998) (sanctions appropriate where reasonable pre-filing investigation would have demonstrated that claims were barred as a matter of law); *Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380 (11th Cir. 1992) (sanctions appropriate where counsel failed to investigate pre-filing and relied solely on hearsay provided by client); *Gartenbaum v. Beth Israel Med. Center*, 26 F. Supp. 2d 645, 646 (S.D.N.Y. 1998) ("Although an attorney may rely on 'the objectively reasonable representations of the client…[he] cannot totally rely on the uncorroborated word of his client and hearsay witnesses for all of the key contentions of the case….if all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his [Rule 11] obligation")  (citing *Forbes v. Merrill Lynch Fenner & Smith*, 179 F.R.D 107, 109 (S.D.N.Y. 1998) (alterations in original)).

Had CQ contacted Huizhou Successor, it would have learned what Rochem learned prior to purchasing Clozapine, and what Rochem later demonstrated during discovery and on summary judgment—the alleged dinner never happened, Huizhou Successor was not "induced" to do anything, and, in fact, that Huizhou Successor believed—and continues to believe—that it had no contractual obligation to only do business with CQ and was free to sell Clozapine to

---

[9] This is not a case where all of the "evidence" regarding CQ's allegations was in Rochem's possession; CQ and its counsel could have investigated the claims of its alleged hearsay declarant with the declarant himself, with Huizhou Successor (with whom CQ does, after all, claim an ongoing contract, despite its failure to ever approach Mr. Qiu regarding this case or Rochem's purchases), and third parties. *Hilton Hotels Corp.*, 899 F.2d at 40 (noting that plaintiff could not argue that case was one in which investigation was rendered impossible until discovery because "'the relevant information was largely in control of the defendant[]'" where many of the witnesses identified were not employed by the defendant). CQ's failure to investigate prior to filing or to obtain admissible evidence after filing demonstrates its bad faith and improper purposes in conducting the litigation.

Rochem. Qiu Decl., Dkt. 69 (detailing Huizhou Successor's reasons for believing CQ abandoned its relationship with Huizhou Successor and failed to satisfy auction requirements).

## II.    CQ'S CONTINUED LITIGATION VIOLATED RULE 11

Not only did CQ file its Complaint in violation of Fed. R. Civ. P. 11, but it violated Rule 11 by continuing to litigate the case in the face of indication after indication that the case was unsupported by record evidence or viable legal theory. Rule 11 imposes a continuing obligation to withdraw claims after they have been revealed to be unreasonable and unsupported. *See, e.g., Paese v. New York Seven-Up Bottling Co., Inc.*, 158 F.R.D. 34 (S.D.N.Y. 1994) (attorney's conduct in taking case to trial without witnesses on causation and "long after discovery should have revealed the factual insufficiency of his client's claims, is precisely the type of willful, wasteful and unjustifiable behavior Rule 11 proscribes"); *Denny v. Hilton*, 131 F.R.D. 659 (M.D. N.C. 1990) (citing, *inter alia*, *Fahrenz v. Meadow Farm*, 850 F.2d 207 (4th Cir. 1988)). Indeed, CQ's very method of litigating the case demonstrates that CQ's only purpose in filing it has been to harass and delay resolution as long as possible. *See, e.g., Farino*, 111 F.R.D. at 349-50. CQ failed to seek admissible evidence supporting its claims, and, in the face of incontrovertible evidence that its claims were fatally flawed, changed its legal and factual theories at the last minute in an attempt to avoid summary judgment. Its summary judgment opposition papers, and other papers signed and filed with the docket in violation of Rule 11, demonstrate CQ and its counsel's bad faith. Indeed, CQ's counsel has essentially admitted that its client does not have a viable claim against Rochem.[10] CQ and its counsel should be required to reimburse Rochem for

---

[10] *See, e.g.,* Kefalas Decl. Ex. A, Cohen Letter to R. Wierenga dated 8/25/09; *Cf.* CQ's Emergency Motion to Preclude Rochem from Filing its Motion for Sanctions until after Court enters its Order on the Pending Motion for Summary Judgment and for Expedited Consideration, ("Motion to Preclude"), Dkt. 110, at p. 4 (in which CQ appears to argue that defense of sanctions motion during the representation is impossible because it creates a conflict of interest between Cohen and CQ).

the costs, time and substantial attorneys' fees Rochem has been forced to expend defending this frivolous litigation.

## A.     CQ Persisted in Litigating After Learning Its Claims Were Untenable

As discovery eventually went forward despite CQ's delays, it should have become apparent to CQ and its counsel that CQ's claims were unsupported by admissible record evidence.  In the face of discovery and legal argument demonstrating as much, however, CQ, rather than withdrawing its flawed claims, changed its theories and desperately attempted to draw the litigation out.

As one example, CQ learned in April 2009, from Rochem's discovery responses, that Rochem (a) was told by Huizhou Successor that there was no contract with CQ, and why Huizhou Successor believed that to be the case; and (b) that Rochem learned from CQ's customer, Ivax, that CQ informed Ivax prior to Rochem's involvement with Huizhou Successor that Huizhou Successor was no longer a viable source of Clozapine, and was likely to shut down. Although CQ admitted at deposition and in papers filed with this course that it had, in fact, informed Ivax of those (untrue) statements, CQ nonetheless maintained its claims and failed to seek discovery that would confirm or reject Rochem's theories.  CQ did not seek testimony from Huizhou Successor, nor did it competently seek testimony from Ivax, to support its claims.

Similarly, CQ, upon learning that Huizhou Successor itself believed that it had been free to deal with Rochem in 2006, never sought discovery from Huizhou Successor to confirm that testimony.  And in spite of that testimony—which confirmed and corroborated Rochem's evidence regarding what it had learned in investigating Huizhou Successor's contractual relationships prior to purchasing Clozapine—CQ continued to insist, based solely on nothing but unconfirmed and inadmissible hearsay statements, that Rochem "knew" CQ had a "contract"

with Huizhou Successor and "induced" Huizhou Successor to "breach" it. CQ apparently believes it is entitled to a trial on "knowledge," despite the utter lack of affirmative evidence of such, based solely on the hope that the jury might disbelieve Rochem's witnesses' unrebutted testimony.

CQ's conduct of discovery was characterized only by delay and failure to properly disclose witnesses, to properly or timely collect documents for production, and to provide thorough, good faith discovery responses. CQ's behavior not only resulted in Rochem's being forced to file a motion for discovery sanctions, seeking, *inter alia*, to have late-disclosed witnesses stricken from CQ's Amended Initial Disclosures, it has also prejudiced Rochem in its recent summary judgment motion. *See* Rochem's Motion to Compel and for Discovery Sanctions, Dkt. 51-52; Rochem's Motion to Strike, Dkt. 94-95. CQ has submitted two declarations from a Chen Hongyi, a witness who was never properly disclosed (either in name or by subject matter), and who has provided "testimony" on summary judgment that contradicts CQ's prior sworn discovery responses and the admissions filed in CQ's Local Rule 56.1 statement. *See*, *e.g.,* Rochem's Motion to Strike, Dkt. 95, at 1-4. CQ has interposed those additional declarations, its failures to disclose, solely to avoid summary judgment and delay resolution of this litigation further. CQ's failure to properly disclose Chen Hongyi at the beginning of the litigation, as Rule 26 requires, demonstrates its bad faith in conducting this litigation.

**B.      CQ's Papers Opposing Summary Judgment Violate Rule 11**

CQ's counsel has conceded that its client does not have grounds to press this litigation, and by the time Rochem filed its summary judgment motion, CQ had twice received notice that Rochem believed the litigation was being pursued in violation of Rule 11. Nonetheless, and

despite the fact that CQ has no evidence in support of its claims, CQ still opposed Rochem's motion for summary judgment, and in so doing further violated both Rule 11 and §1927. CQ ignored the overwhelming record evidence, and included in its Opposition briefs wildly speculative accusations and assertions regarding Rochem's business activities.

The sanctionable allegations and arguments included in CQ's Opposition papers (including its "Sur-Reply" and recently filed supplemental brief and declarations) are myriad. Its papers reveal a profound misunderstanding of the burdens of proof in this case. Additionally, as noted above, CQ included testimony by affidavit that was submitted in violation of Fed. R. Civ. P. 26, and that contained factual assertions that contradicted its prior discovery answers. Indeed, the factual assertions (primarily on immaterial matters and minutae) provided in the various papers CQ has filed opposing one summary judgment motion are internally inconsistent and at times directly contradictory. CQ persisted in claiming its contract with Huizhou Predecessor survived the auction, and continued after the last purchase in 2005, and also argued that its contract with Wuhan Shiji—which, as demonstrated above, along with the alleged Huizhou Successor contract could not be simultaneously binding on CQ—is irrelevant to its claims for damages on the Huizhou Successor contract. It also asserted, based on inadmissible hearsay and improper opinion testimony, that Rochem violated FDA regulations in importing Clozapine.

CQ's ridiculous allegations regarding FDA violations is illustrative. First, CQ relied on unattributed hearsay within unattributed hearsay that purported to be related to Huizhou Successor's records, and from that hearsay jumped to the following unwarranted and speculative assumptions: (a) that the first shipment of Clozapine Rochem purchased from Huizhou Successor was not, in fact, manufactured by Huizhou Successor, (b) that Rochem knew that to be the case, and (c) that Rochem lied about that "fact" to Ivax, its customer.

Not only is that factual claim wholly unsupported by record evidence, but CQ provided no legal support for CQ's related arguments that (i) Rochem's behavior violated some unreferenced FDA regulation, and (ii) that Rochem's alleged activities after purchasing Huizhou Successor Clozapine could serve as "wrongful conduct" that induced Huizhou Successor to sell Clozapine. Neither of CQ's legal contentions finds any support in the law, and a competent attorney could not make these arguments in good faith. There is simply no record evidence to tie CQ's unwarranted (and uninvestigated) allegations to any alleged "inducement." CQ made the allegations anyway.[11]

CQ also relied on inadmissible and unsupported opinion evidence, while failing to attach the documents purportedly supporting it, to argue that Rochem violated FDA regulations because it allegedly sold Clozapine that was somehow different in specification than the Huizhou Successor Clozapine CQ sold. CQ then asserted, from that unsupported "fact," the unwarranted and speculative inferences (for which there is literally no evidence) that Rochem deliberately misrepresented the specifications of the Clozapine it sold. There is no evidence but Joan Chen's inadmissible and incompetent assertions, however, to support such claims; moreover, CQ provides literally no argument or evidence that any of Rochem's alleged "FDA violations" were in any way connected to the alleged "inducement" of Huizhou Successor to breach its

---

[11] *See* CQ International Co., Inc.'s Opposition to Rochem International, Inc., USA's Motion for Summary Judgment, ("Opposition"), Dkt. 78, at 6-7. CQ has since agreed, without withdrawing this accusation, that it cannot be considered on summary judgment because it made the accusation despite having no admissible evidence to support it. CQ International Co., Inc.'s Reply Brief In Support of Its Oppostion To Rochem International, Inc., USA's Motion for Summary Judgment, ("CQ Sur-Reply"), Dkt. 108, at n. 22.

nonexistent contract with CQ.[12]  CQ's motion papers provide nothing—no factual support, no

actual legal argument—to support a claim of FDA violations, only CQ's unsupported

speculations.  CQ did not undertake adequate and reasonable factual or legal investigation prior

to making its unsupported assertions.  That is exactly the sort of thing that Rule 11 prohibits.[13]

## C.     CQ Has Filed Other Frivolous Documents In Violation of Rule 11

CQ has filed other signed documents with the Court that violate Rule 11.  First, CQ's

counsel filed a letter to the Court in the docket frivolously accusing Rochem of making a death

threat by using "bad luck numbers" in a settlement demand.  *See* Cohen Letter to Court, Dkt. 93,

Kefalas Decl. Ex. B.  Mr. Cohen's letter is facially absurd and clearly violates Rule 11.  *See, e.g.,*

*Northwest Bypass Group v. U.S. Army Corps. of Engineers*, 569 F.3d 4 (1st Cir. 2009) (affirming

sanctions against an attorney pursuant to 28 U.S.C. §1927 where lawyer made baseless

accusations of criminal conduct); *Legault v. Zambarano*, 105 F.3d 24 (1st Cir. 1997) (affirming

---

[12] Additionally, CQ's entire FDA violations argument is fully dependent upon Chen's assertions regarding the contents of a document, a copy of Huizhou Predecessor's DMF, that CQ has refused to produce in discovery.  Chen Decl., Dkt. 82/109, at ¶33.  CQ argues that it disclosed the existence of the document and it was incumbent on Rochem to move to compel.  CQ Sur-Reply at n.33.  No rule of law, however, permits a litigant to withhold a document and then testify as to its contents in support of its claims, without regard to "disclosure" of the document's existence or a confidentiality/trade secret justification for withholding it.  Rochem did not move to compel because it believed, and continues to believe, that the document is irrelevant to CQ's claims.  That does not render inadmissible hearsay testimony permissible and does not allow CQ to avoid summary judgment by "asserting" the content of the document.

[13] There are many other legally and factually unsupported claims in the briefs CQ filed in Opposition to Rochem's motion for summary judgment.  For example, CQ asserts to the Court that Rochem's testimony about its knowledge and motives is "inadmissible hearsay."  Any competent attorney knows the distinction between hearsay—an out of court statement offered for the truth of the matter asserted therein—and an out of court statement with independent evidentiary significance, offered without regard to the truth of the out of court statement.  No competent attorney could argue in good faith that the testimony of Robyn Frisch and Matt Thiel regarding what Huizhou Successor told them about its relationship with CQ is being offered for a hearsay purpose.  CQ also asserts over and over that it somehow would have made sales of Huizhou Successor Clozapine to Ivax, despite the undisputed evidence and admissions that CQ told Ivax that Huizhou was not a viable source of Clozapine and would like shut down, that CQ advised Ivax that purchasing Huizhou Successor Clozapine would be a "huge risk," and that CQ was not even trying to sell Ivax anything but Clozapine manufactured by SJ/YH.  *See, e.g.,* Rochem SMF ¶35, Kefalas Dec. Ex. 17, Rochem Reply Brief at p. 16 and n. 36, and p. 19, n. 40.

Rule 11 sanctions where attorney filed baseless letter with the Court and repeated unsupported and frivolous allegations therein).  The settlement demand, attached hereto as Kefalas Decl. Ex. C, cannot, under any reasonable interpretation, be viewed as a death threat.  No competent officer of the Court would make such an allegation in good faith.[14]

### III.     CQ'S COUNSEL VIOLATED 28 U.S.C. §1927

Under 28 U.S.C. §1927,"[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *Id.*  CQ's counsel, Herbert Cohen, not only violated Rule 11 by signing frivolous pleadings and opposing Rochem's motion for summary judgment, but certainly unreasonably and vexatiously multiplied proceedings in this case.  As such, he should be liable personally for the entirety of the fees incurred by Rochem as a result of defending against this unsupported litigation.  *See, e.g., Royal Oak Entertainment, LLC v. City of Royal Oak*, 316 Fed. Appx. 482, 487 (6th Cir. 2009) (imposing sanctions for counsel's "failure to fulfill her 'obligation as an officer of [the] Court to instruct her clients that they had no legal remedy and either voluntarily dismiss this case or make a good faith argument to change the law'") (internal citations omitted).  "Vexatiously multiplying proceedings" can "include conduct where an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the

---

[14] CQ later filed a frivolous motion with this Court requesting that Rochem be precluded from filing this motion until after summary judgment was determined, despite there being no legal or factual support for making such a motion. Dkt. 112.  Such a motion could have, if successful, seriously prejudiced Rochem's ability to file the sanctions motion at all.  Rochem was forced to incur attorneys' fees to respond to CQ's request for expedited consideration and the preclusion of its rights, on New Year's Eve.   CQ repeated its frivolous accusations regarding Rochem's settlement demand in that motion. Dkt. 112, at 2.

litigation of non-frivolous claims." *Id.*; *see also Eberly v. Manning*, 258 Fed. Appx. 224, 227-28 (10th Cir. 2007) ("Sanctions are appropriate when an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; ***or when the entire course of the proceedings is unwarranted***") (emphasis added); *Northwest Bypass Group*, 569 F.3d at 7-9; *St. Paul Fire & Marine Ins. Co. v. Vedatech Int'l Inc.*, 245 Fed. Appx. 588, 592 (9th Cir. 2007) (§1927 sanctions appropriate where filings "were incomplete and inaccurate" and counsel filed "numerous motions for extensions of time and errata briefs").

A finding of bad faith is not required in the First Circuit to assess sanctions under §1927. *Northwest Bypass Group*, 569 F.3d at 6; *cf. Royal Oak Entertainment*, 316 Fed. Appx. at 487.

Cohen's litigation of this case on behalf of his client clearly warrants sanctions under §1927. First, the failure to investigate the claims at the outset, and Cohen's apparent willingness to take his client's hearsay evidence at face value, both fall short of the expected behavior of an officer of the Court. Cohen pressed forward with the litigation on his client's behalf well after it became apparent—even to him, as evidenced by his own correspondence—that the claims were unsupported, and Cohen adopted several additional brand new and wholly unsupported (in fact or law) allegations in hopes of avoiding summary judgment. *See, e.g., Eberly*, 258 Fed. Appx. at 228-29 (citing "shifting positions adopted by the plaintiffs in order to avoid summary judgment, which increased costs to the defendants who had to respond to the changing arguments" as sanctionable behavior under §1927); *see also Salvin v. Am. Nat'l Ins. Co.*, 281 Fed. Appx. 222, 227 (4th Cir. 2008) ("[T]here is nothing novel in recognizing that an attorney can face sanctions 'for pursuing a case after it becomes clear that the case is without merit.'"); *Bailey v. Papa John's*, 236 Fed. Appx. 200 (6th Cir. 2007) (litigation activities sanctionable when attorney continues to

litigate after it becomes clear that claims are not supported by admissible evidence). Cohen has ignored multiple notices from Rochem regarding Rule 11. Kefalas Decl. Exs. D-F. Cohen has twice filed papers with the Court referencing the purported "death threat" made by counsel for Rochem against his client based on nothing more than a settlement demand. Cohen's litigation of this case unduly multiplied proceedings, and, as the case should never have been filed, Cohen should be required to compensate Rochem for the attorneys' fees his actions caused Rochem to incur. Rochem's motion should be granted.

## CONCLUSION

For all the foregoing reasons, Rochem respectfully requests that the Court GRANT this motion in its entirety and award Rochem the costs, including attorneys' fees, incurred in defending against CQ's frivolous claims, in an amount to be determined at the close of the litigation. [15]

Respectfully submitted,

DATED: January 20, 2010                 MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By:     s/ Robert J. Wierenga
Robert J. Wierenga *(Pro Hac Vice)*
Kimberly K. Kefalas *(Pro Hac Vice)*
101 N. Main St., 7th Floor
Ann Arbor, MI  48104
Telephone:  734-668-7756
Email:  Wierenga@millercanfield.com
Email:  Kefalas@millercanfield.com

---

[15] Because the case is ongoing, Rochem is reluctant to provide its billing records to CQ due to attorney-client privilege and work product concerns related to the ongoing litigation. Upon the Court's request, Rochem will document the costs and damages incurred, including attorney's fees, as a result of CQ's frivolous and vexatious filings.

LYNE WOODWORTH & EVARTS LLP

Joseph F. Ryan BBO#435720
12 Post Office Square
Boston MA 02109
Telephone:  617 523-6655
Telecopy:  (617) 248-9877
Email:  jryan@lwelaw.com

ATTORNEYS FOR DEFENDANT

17599556.1\123246-00004